**INDIAN ROCKS PROPERTY OWNERS ASSOCIATION, INC. OF LEDGEDALE**

v.

**John P. GLATFELTER and Regina L. Glatfelter, his wife, Appellants.**

Commonwealth Court of Pennsylvania.

Argued April 8, 2008.

Decided June 9, 2008.

---

Jeffrey S. Treat, Honesdale, for appellants.

Ronald M. Bugaj, Honesdale, for appellee.

BEFORE: SMITH–RIBNER, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

John P. Glatfelter and his wife, Regina L. Glatfelter, appeal from the June 26, 2007 order of the Court of Common Pleas of the 22nd Judicial District, Wayne County, holding John Glatfelter in civil contempt of court in the equity action filed by Indian Rocks Property Owners Association, Inc. of Ledgedale (Association). Appellants question whether the trial court erred in concluding that the Association may reject the "recreational cabin" exclusion set forth in Section 104(b)(7) of the Pennsylvania Construction Code Act (Construction Code), Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. § 7210.104(b)(7), and whether Appellants agreed to comply with Association rules and regulations that directly contravene the Construction Code. The Association questions whether Appellants' construction met the definition of a recreational cabin to qualify for the exclusion.

The Association is the governing body of the development known as "Indian Rocks," located in Salem Township (Township). It came into existence in 1955 when the original owners purchased 546 acres "to develop adjacent lakeside land into a miniature community for vacation, recreation and retirement." Official Handbook; Reproduced Record (R.R.) at 85. The Association's powers and duties are set forth in its rules and regulations and in recorded protective covenants (Covenants). Article VIII, Section 1 of the Covenants (Architectural Control Committee) provides that "[n]o building, excavation, exterior remodeling or altering of any structure, wall or fence shall be commenced without obtaining written approval of the Developer or by an Architectural Committee ... appointed by the Board of Directors of the Association as to the location, elevation, set back from property lines, construction materials, quality of workm[a]nship and harmony of external design with existing structures." R.R. at 13a. Appellants purchased Lot 701 in 1980 and obtained a deed subject to the Covenants. Mrs. Glatfelter became the sole owner when her husband died in 1990.

In the fall of 2003 Mrs. Glatfelter's son, David Glatfelter, began constructing a foundation on Lot 701 to build a home after obtaining a building permit. The Association initially inspected and approved the trench excavation of the footer. Its community manager Jane Hancock informed Mrs. Glatfelter and her son in December 2003 that the work was improper and inadequate, and Appellants were ordered to cease the work until certain conditions were met. In April 2004 the Association filed an equity action in which it alleged that Appellants violated the Construction Code and Article III, Section 1 of the Covenants and sought an order directing them to comply with Association's construction practices/standards and to cease continuing work without first obtaining approval of the Architectural Committee. On April 30 David signed a document agreeing to stop all work until:

1. A new application is submitted to the Indian Rocks Architectural Control Committee for approval, as [his] present application has expired.

2. A certified engineer hired by [him] will work with the Indian Rocks Architectural Control Committee and Indian Rocks state-certified inspectors to determine how construction should proceed.

R.R. at 146a. In September 2004 the Association's building inspector recommended removal of the constructed footer.

The Association passed Resolution 2004–3 on April 24, 2004 adopting the Construction Code to be applied to "all new construction, and/or all additions, renovations and improvements to the exterior of all new or existing structures within the Indian Rocks community...." R.R. at 155a. On July 15, 2004, the Legislature amended Section 104(b), effective immediately, and added Section 104(b)(7) to exclude *any recreational cabin* from a Construction Code application if:

(i) the cabin is equipped with at least one smoke detector, one fire extinguisher and one carbon monoxide detector in both the kitchen and sleeping quarters; and

(ii) the owner ... files with the municipality either:

(A) an affidavit on a form prescribed by the department attesting to the fact that the cabin meets the definition of a "recreational cabin" in section 103; or

(B) a valid proof of insurance for the recreational cabin, written and issued by an insurer authorized to do business in this Commonwealth, stating that the structure meets the definition of a "recreational cabin" as defined in section 103.

Section 103, 35 P.S. § 7210.103, defines a "recreational cabin" as a structure that is:

(1) utilized principally for recreational activity;

(2) not utilized as a domicile or residence for any individual for any time period;

(3) not utilized for commercial purposes;

(4) not greater than two stories in height, excluding basement;

(5) not utilized by the owner or any other person as a place of employment;

(6) not a mailing address for bills and correspondence; and

(7) not listed as an individual's place of residence on a tax return, driver's license, car registration or voter registration.

The Association rejected the recreational cabin exclusion under Section 104(b)(7) in Resolution 2005–2 adopted on April 23, 2005, stating that it did not wish to recognize the exclusion for "a weekend or vacation dwelling." R.R. at 156a.

On July 26, 2005, the date of a scheduled non-jury trial in the equity action, the parties entered into a stipulation in which Appellants agreed to file an application with the Association within sixty days outlining and identifying the intended construction to conform to the Covenants, the Construction Code and the Association's rules and regulations in effect and to engage a professional engineer who would monitor construction and certify compliance. The Association agreed not to assess fines and penalties for past activities. The trial court approved the stipulation and made it an order of the court. In August 2005 the Architectural Control Committee rejected Appellants' application and directed them to submit a new building permit as the submitted permit had expired, a copy of a contract with the engineering firm and appropriate plans for stick-built construction.

In November 2005 the Association filed its petition for contempt, alleging that Appellants had not submitted the required paperwork in willful violation of the trial court's order approving the July 26, 2005 stipulation. In their answer Appellants averred that they had submitted additional documents requested by the Association and that the recreational cabin exclusion under the Construction Code applied to

their construction. They later submitted a building permit issued by the Township on December 26, 2005 for construction of a "two-story vacation home, slab on grade: stick built (recreational cabin exempt)." R.R. at 154a. In a "Recreational Cabin Affidavit" (Department of Labor and Industry's Form UCC–13) attached to the permit, Appellants attested that the proposed cabin met the definition of a recreational cabin under Section 103 of the Construction Code. They also submitted a new application and plans to the Association, proposing to construct a two-story, 29–foot–by–30–foot building with four rooms on each floor with a bathroom and built-in cots at a cost of $60,000. They intend to build a recreational cabin on the already erected foundation.

At an April 12, 2006 hearing on the petition for contempt, the parties agreed to submit a written stipulation of the underlying facts for the trial court's consideration. They set forth the following issues for determination: "[W]hether or not the provisions of a recreational cabin exclusion is [sic] applicable in this case and/or whether or not a recreational cabin as defined by the Uniform [Construction] Code creates an exemption which is binding upon the Townships as well as Property Owners Associations." Stipulation ¶ 23; R.R. at 79a. The trial court concluded that Appellants satisfied Section 104(b)(7) of the Construction Code setting forth the recreational cabin exclusion, but it determined in its June 19, 2006 Opinion and Order that the exclusion did not apply and does not "create an exemption which is binding upon these parties because of their Agreement dated April 30, 2004." *Id.*, at

pp. 1–2; R.R. at 248a–249a. It stated: "On April 30, 2004, the parties entered into an Agreement in which the Defendants agreed to comply with Plaintiff's requirements. These requirements pertained to utilization of the Architectural Control Committee and a certified engineer. Defendants also agreed to file a new application with Plaintiff." *Id.* at 3; R.R. at 250a.

■ Finding that Appellants' failure to comply with the Association's rules and regulations was not willful, the trial court gave Appellants ninety days to comply with the April 30, 2004 Agreement and denied the Association's petition for contempt as premature.[1] The Association thereafter filed a second petition for contempt. On June 26, 2007, the trial court found John P. Glatfelter, deceased, in civil contempt of court, ordered him to remove the foundation, machinery and all debris from the property within thirty days, authorized the Association to take any necessary measures for the property and ordered him to reimburse its expenses.[2]

In 1999 the Legislature enacted the Construction Code to adopt the nationally recognized model code of Building Officials and Code Administrators International, Inc. (BOCA Code) as "a Uniform Construction Code" to "insure that this Commonwealth has a uniform, modern construction code which will insure safety, health and sanitary construction." Section 102(a)(3) and (4) of the Construction Code, 35 P.S. § 7210.102(a)(3) and (4). *See also Warminster Fiberglass Co., Inc. v. Upper Southampton Township,* 939 A.2d 441 (Pa.Cmwlth.2007). Under Section 301(a)(1), 35 P.S. § 7210.301(a)(1), the

---

1. By order of October 23, 2006, this Court quashed Appellants' appeal from the trial court's June 2006 order without prejudice on the basis that they were not aggrieved by the order.

2. The Court's review of a contempt order is limited to determining whether the trial court abused its discretion or committed an error of law. *Department of Environmental Resources v. Gentile,* 683 A.2d 711 (Pa.Cmwlth.1996).

Department of Labor and Industry was required to promulgate regulations "adopting the 1999 BOCA National Building Code, Fourteenth Edition, as a Uniform Construction Code" within 180 days of the effective date of the Construction Code and to promulgate separate regulations "relating to administration that are necessary for the department's implementation of [the Construction Code]." Pursuant to Section 301(a)(1), the Department promulgated separate regulations adopting the Uniform Construction Code and subsequently incorporating into its separate regulations the recreational cabin exclusion.

The Construction Code applies "to the construction, alteration, repair and occupancy of *all buildings* in this Commonwealth." Section 104(a) of the Construction Code, 35 P.S. § 7210.104(a) (emphasis added). Other construction regulations are expressly preempted under Section 104(d), 35 P.S. § 7210.104(d):

**(d) Preemption.—**

(1) Except as otherwise provided in this act, construction standards provided by any statute or local ordinance or regulation promulgated or adopted by a board, department, commission, agency of State government or agency of local government shall continue in effect only until the effective date of regulations promulgated under this act, at which time they shall be *preempted by regulations promulgated under this act and deemed thereafter to be rescinded.*

(2)(i) *Except as otherwise provided in this act and as specifically excepted in subparagraph (ii), a homeowners' association or community association shall be preempted from imposing building construction standards or building codes for buildings to be constructed, renovated, altered or modified.*

(ii) In municipalities which have not adopted an ordinance for the administration and enforcement of this act, a homeowners' association or community association may adopt by board regulations the Uniform Construction Code or the ICC [International Code Council] International One and Two Family Dwelling Code, 1998 Edition. The applicable building code shall constitute the standard governing building structures in the association's community. (Emphasis added.)

Section 301(d)(1), 35 P.S. § 7210.301(d)(1), further provides:

**(d) Scope of regulations.—**

(1) The regulations adopted by the department implementing these codes *shall supersede and preempt all local building codes regulating any aspect of the construction, alteration and repair of buildings* adopted or enforced by any municipality or authority or pursuant to *any deed restriction, rule, regulation,* ordinance, *resolution,* tariff or order of any public utility or any State or local board, agency, commission or *homeowners' association* except as may be otherwise *specifically* provided in this act. (Emphasis added.)

Appellants argue that the Association had no authority to reject the recreational cabin exclusion and that the trial court ignored Section 301(d)(1) of the Construction Code, which clearly and unambiguously preempts homeowners' associations from regulating any aspect of construction. Also, they could not have waived preemption of the exclusion in the April 2004 agreement because the Association passed Resolution No. 2005–2 rejecting the exclusion one year later in April 2005; the trial court relied on the 2004 agreement in an attempt to override the preemption; and they did not agree to comply with the Association's unlawful rejection of the ex-

clusion or to waive constitutionally protected home ownership rights when they agreed to comply with the Covenants and rules and regulations.

The Association asserts that the trial court properly concluded that the recreational cabin exclusion does not apply. Relying upon the July 26, 2005 stipulation entered into after its adoption of the resolution rejecting the exclusion, the Association argues that the Glatfelters knowingly waived the exclusion when they agreed to comply with the Association's rules and regulations then in effect. It cites *Cheltenham Township Appeal*, 413 Pa. 379, 196 A.2d 363 (1964), holding that one may be deemed to have waived statutorily or constitutionally guaranteed rights by action or inaction where the waiver is not contrary to public policy. In addition, the proposed structure does not meet the definition of a recreational cabin because Appellants presented no evidence that it would be used for recreational activity, which is intended to include only hunting and fishing as shown in the summary for SB 1139 proposing changes to the Construction Code, titled "Exclusion of Hunting/Fishing Cabins from UCC [Uniform Construction Code]," and stating that a recreational cabin is a structure "used principally for the purpose of engaging in seasonal hunting and fishing." R.R. at 163a. It posits that the proposed structure cannot be considered a recreational cabin because it will not be a temporary structure located in an isolated area and that the recreational cabin exclusion was not intended to allow unsafe construction practices.

When interpreting a statute, the Court must ascertain and effectuate legislative intent and give effect to all provisions of the statute. Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921(a). When statutory language is clear and free from doubt, "it generally furnishes the best indication of legislative intent." *Commonwealth v. Dickson*, 591 Pa. 364, 372, 918 A.2d 95, 100 (2007). When the language is clear, explicit and free from ambiguity, the Court "discern[s] intent from the language alone, and not from the arguments based on legislative history...." *In re Adoption of J.A.S.*, 939 A.2d 403, 405 (Pa.Super.2007) (quoting *Cimino v. Valley Family Medicine*, 912 A.2d 851, 853 (Pa.Super.2006)), *appeal denied*, 591 Pa. 731, 921 A.2d 494 (2007).

The Construction Code expressly preempts the field of construction regulation.[3] Section 104(d)(2)(i) provides that homeowners' associations and community associations "shall" be preempted from imposing building construction standards, except as otherwise provided in the Construction Code and as specifically excepted in subparagraph (ii), which does not apply here. Under Section 301(d)(1), the Department's regulations "shall" supersede and preempt *all* regulations of *any* aspect of construction under local codes, deed restrictions or rules and regulations of homeowners' associations unless the Construction Code specifically provides otherwise. It does not provide for any specific exception to the preemption.

By definition the term "shall" generally is mandatory, with "no room to overlook a statute's plain language to

---

**3.** Statutory preemption takes three forms: (1) expressly allowing adoption of ordinances not inconsistent with the statute, (2) expressly forbidding legislation in regard to the subject covered by the statute and (3) prohibiting contradictory or inconsistent municipal ordinances where the statute is silent as to municipalities' authority to enact supplementary legislation. *See Nutter v. Dougherty*, 595 Pa. 340, 938 A.2d 401 (2007); *Mars Emergency Med. Servs., Inc. v. Township of Adams*, 559 Pa. 309, 740 A.2d 193 (1999).

reach a different result." *Oberneder v. Link Computer Corp.*, 548 Pa. 201, 205, 696 A.2d 148, 150 (1997). Under the plain language in Sections 104(d)(2)(i) and 301(d)(1) of the Construction Code, the Association is preempted "from imposing building construction standards or building codes" and "regulating any aspect of the construction." Any recorded deed restrictions also are preempted. Accordingly, the Association is bound by the recreational cabin exclusion and may not impose its own construction standards for such a structure. Its rejection of the exclusion in Resolution No. 2005–2 is in direct contravention of the preemption provisions and therefore is unenforceable.

■ Appellants submitted Form UCC–13, attesting that the proposed cabin would be used for recreational activity only and that the proposed structure met the definition of a recreational cabin. R.R. at 172a. The Township issued a building permit authorizing construction of a recreational cabin under the recreational cabin exclusion. The trial court found that Appellants satisfied the requirements for the exclusion.[4] The trial court's conclusion that the preemption did not apply because Appellants agreed to comply with the Association's rules and regulations in the April 2004 agreement is not supported by the record. They only agreed to file a new application to the Architectural Control Committee and to hire a certified engineer to work with the committee. Furthermore, they could not have knowingly waived the exclusion because it was enacted two months after the April 2004 agreement.

■ The Court rejects as well the Association's suggestion that Appellants waived the recreational cabin exclusion by agreeing in the July 2005 stipulation to comply with the Covenants and Association rules and regulations then in effect. R.R. at 150a. To be enforceable, any agreement to waive procedural rules or statutory requirements must refer specifically to those rules. *Sanders v. Allegheny Hosp.—Parkview Div.*, 833 A.2d 179 (Pa.Super.2003). A waiver cannot be found from any general language and its inferential intent. *Id.* The stipulation does not specifically refer to the recreational cabin exclusion, and Appellants' intent to waive the exclusion cannot be inferred from the language expressing their agreement to comply with Association rules and regulations in general terms.

After reviewing the stipulated facts and relevant Construction Code provisions and Department regulations, the Court concludes that the Association and the Township are preempted by the Construction Code from imposing their own construction standards and that the Association and the Township are bound by the recreational cabin exclusion. The trial court, consequently, erred in holding John P. Glatfelter in civil contempt on the basis that the exclusion does not apply to this case. Because of its error, the Court must reverse the trial court's order.

### *O R D E R*

AND NOW, this 9th day of June, 2008, the Court reverses the order of the Court

---

**4.** The Association argues that Appellants presented no evidence that the recreational cabin will be equipped with a smoke detector, fire distinguishers and carbon monoxide detectors. Section 104(b)(7), however, does not require the owner to attest in an affidavit that the cabin will be equipped with those items. Moreover, the only issues submitted for the trial court's consideration were whether the recreational cabin exclusion applies to this case and whether the Township and the Association are bound by the exclusion.

of Common Pleas of the 22nd Judicial District, Wayne County, Pennsylvania.